IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PAUL THIELEMANN,                )
                                )
    Movant/Defendant,           )
                                )  Crim. No. 07-91-SLR
    v.                          )  Civ. No. 10-1138-SLR
                                )
UNITED STATES OF AMERICA,       )
                                )
    Respondent/Plaintiff.       )


## MEMORANDUM OPINION

_____

Paul Thielemann.  Pro se movant.

Edmond Falgowski.  Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware.  Counsel for respondent.

_____

December 12, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I.   INTRODUCTION

Paul R. Thielemann ("movant") is a federal inmate currently confined at the Petersburg Low Federal Correctional Institution in Petersburg, Virginia. Movant timely filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (D.I. 108) The government filed an answer in opposition (D.I. 133), to which movant filed a response (D.I. 140). For the reasons discussed, the court will deny movant's § 2255 motion without holding an evidentiary hearing.

## II.   BACKGROUND

In June 2007, the Grand Jury for the District of Delaware returned an eighteen count indictment against movant charging him with: production of child pornography, in violation of 18 U.S.C. § 2251(a); conspiracy to produce child pornography, in violation of 18 U.S.C. § 2251; four counts of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); five counts of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(1); possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); five counts of receipt/transmission of obscenity depicting children, in violation of 18 U.S.C. § 1446(a)(2)(A) and (B); and possession of obscenity depicting children, in violation of 18 U.S.C. §1446(b)(2)(A) and (B). On January 18, 2008, movant waived indictment and entered a guilty plea to a one count information charging him with receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), punishable by a maximum twenty year sentence with a five year minimum mandatory term of imprisonment, followed by supervised release of up to a life term.

The court sentenced movant to the statutory maximum of two hundred forty months of imprisonment. Movant appealed, alleging that the district court erred in denying his amended motion to suppress and in denying his Rule 29 motion for judgment of acquittal. The Court of Appeals for the Third Circuit affirmed movant's conviction and sentence. *United States v. Thielemann*, 575 F.3d 265 (3d Cir. 2009).

## III.   DISCUSSION

Movant timely filed his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 asserting two grounds for relief. Claim one asserts that defense counsel provided ineffective assistance by: (a) inaccurately advising movant about the applicability of the U.S.S.G. § 2G2.2(c) cross-reference; (b) incorrectly advising movant about the definition for the term "visual depiction" and permitting movant to plead guilty when he only watched live video stream on his computer without actually storing any images; (c) failing to argue on direct appeal that the government breached the terms of the plea agreement by not presenting a verbal argument regarding the applicability of the U.S.S.G. § 2G2.2(c) cross-reference; (d) intentionally misleading movant into believing the second written plea offer was better than the first written plea offer; (e) failing to persuasively argue at sentencing and on appeal that movant did not have the proper "purpose" for the cross-reference to apply; (f) failing to review the full discovery; (g) permitting the court to improperly involve itself in the plea proceedings; and (h) committing multiple errors. In claim two, movant asserts that the court violated his due process rights during sentencing by improperly considering out-of-court testimony and by making improper credibility determinations.

2

Movant also filed a "Supplemental Opening Brief" asserting three additional arguments (hereinafter referred to as claims three, four, and five). Claim three asserts that movant's plea was unknowing and involuntary because he did not possess a factual understanding of the elements of the offense "receipt of child pornography," the court did not explain which "element" of the cross-reference applied, and counsel did not inform movant that his admissions in paragraph one of the plea agreement relating to the receipt of child pornography charge constituted an admission of guilt to the cross-reference itself. In claim four, movant contends that this court and Third Circuit erred by applying the cross-reference without first determining if there was sufficient evidence to apply the cross-reference. And finally, claim five alleges that movant's sentence is unreasonable because the U.S.S.G. § 2G2.2 cross-reference is flawed.

### A. Claim One: Ineffective Assistance of Counsel

Movant has properly raised his ineffective assistance of counsel allegations in the instant § 2255 motion rather than on direct appeal,[1] and the court must review these arguments pursuant to the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, movant must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. In the context of a guilty plea, a

---

[1] *See United States v. Garth,* 188 F.3d 99, 107 n.11 (3d Cir. 1999); *United States v. Cocivera,* 104 F.3d 566, 570 (3d Cir. 1996).

petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Additionally, in order to sustain an ineffective assistance of counsel claim, movant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

### 1. Counsel provided inaccurate advice about the applicability of the cross-reference

Movant contends that counsel failed to accurately predict the applicability of the cross-reference U.S.S.G § 2G2.2(c), and that he never would have entered the plea agreement but for that inaccurate prediction. For the following reasons, the court concludes that this argument does not warrant relief.

It is well-settled that "[d]efense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). In addition, solemn declarations in open court carry a strong presumption of verity that creates a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, the plea agreement accurately states the maximum penalties for the offense and explicitly provides that movant "has

4

been put on notice that the [government] will argue at sentencing that the court must calculate [his] Guideline range under USSG Section 2G2.1, pursuant to the cross-reference set forth in Section 2G2.2(c)." (D.I. 67 at 2) During the plea colloquy, the court expressly informed movant that: (a) he could be sentenced to up to twenty years of imprisonment; (b) the parties were free to argue any other sentencing issues (expressly including the § 2G2.2(c) cross-reference); (c) the court retained ultimate discretion over the sentence to be imposed; and (d) the final sentence might be more severe than the sentence requested. (D.I. 121) While under oath, movant indicated that he understood the court's explanation, and also confirmed that there were no other agreements or promises regarding his potential sentence.

This record clearly establishes that the court conducted an adequate plea colloquy which corrected any erroneous information counsel may have provided movant regarding the § 2G2.2(c) cross-reference. Additionally, movant has not provided objective evidence that he would not have pled guilty but for counsel's alleged inaccurate prediction about the applicability of the cross-reference. Notably, because movant has failed to provide compelling evidence as to why the statements he made during the plea colloquy should not be presumptively accepted as true, he is bound by the representations he made during the plea colloquy that he had discussed his case with defense counsel, that he was satisfied with counsel's representation, and that he understood he faced a minimum mandatory sentence of five years and a possible maximum sentence of twenty years. (D.I. 121 at 5) Given these circumstances, the court will deny movant's first allegation of ineffective assistance.

### 2. Counsel provided incorrect advice regarding the definition of the term "visual depiction"

The one count information to which movant pled guilty provides, in relevant part,

that

> [o]n or about June 16, 2006, in the District of Delaware, [movant] knowingly received and attempted to receive by computer in interstate commerce child pornography, that is, a computer generated visual depiction in the form of a webcam transmission which was of a minor engaged in sexually explicit conduct, specifically, simulated masturbation of the minor and/or lascivious exhibition of the minor's pubic area, in violate of Title 18, United States Code, Section 2252A(a)(2) and (b)(1).

(D.I. 66)  In turn, during his plea colloquy, movant admitted that

> on or about June 16, 2006, he used an Internet connected computer to have an online chat conversation with Christopher J. Phillips, a separately indicted co-conspirator, during which they also used web cams to view each other.   While transmitting on web cam to [movant], Christopher J. Phillips had on his lap a minor, visible to [movant], and at [movant's] encouragement and inducement Christopher J. Phillips did simulate masturbation of the minor, and did pose the minor in order to effect the lascivious exhibition of the minor's pubic area.

(D.I. 67 at 5, 8)

In this portion of claim one, movant interprets the statutory definition of the term

"visual depiction" as requiring an image to be stored on a disk or computer and,

therefore, contends that the live video stream he viewed on his computer's webcam did

not constitute a "visual depiction" for child pornography purposes.  He further asserts

that he only entered a guilty plea because counsel intentionally misinformed him that a

"visual depiction" is "anything seen by the eye."

Movant's argument lacks merit. A person is guilty of the offense "receipt of child

pornography" in violation of 18 U.SC. § 2252A(a)(2) if he knowingly receives child

pornography in interstate commerce by computer.  Child pornography is defined as any

6

visual depiction of a minor engaged in an actual or simulated sex act and/or the
lascivious exhibition of the genitals or pubic area.  (D.I. 67 at ¶ 2(b))  In turn, a visual
depiction "includes undeveloped film and video tape, and data stored on computer disks
or by electronic means which is capable of conversion into a visual image."
18 U.S.C. § 2256(5)(2006).

At least two courts of appeals have held that a live video feed over the internet
constitutes a "visual depiction" for § 2265(5) purposes, because the use of the word
"includes" in the "visual depiction" definition demonstrates that § 2265(5) was meant to
provide a non-exhaustive list of examples of visual depictions, rather than a
comprehensive list of examples. *See United States v. Nichols*, 371 F. App'x 546, 548
(5th Cir. 2010); *United States v. Tucker*, 305 F.3d 1193, 1204 n.15 (10th Cir. 2002).
Notably, the fact that Congress later amended the definition to include "undeveloped
film and videotape, data stored on computer disk or by electronic means which is
capable of conversion into a visual image that has been transmitted by any means,
**whether or not stored in a permanent format**"[2] "does not mean that a visual depiction
only included stored images at the time of movant's offense. *See, e.g., Nichols*, 371 F.
App'x at 549;  *United States v. Whiting*, 165 F.3d 631, 633 (8th Cir. 1998)(holding that
images stored on computer disks had already been covered by the pre-amendment
statute, and that the amendment "was a mere clarification and did not change the
substance of the law.").  Given these circumstances, the court concludes that counsel's

---

[2]Protect Our Children Act of 2008, Pub. L. No. 110-401, § 302, 122 Stat. 4229, 4242
(emphasis added).

advice as to what constituted a visual depiction did not amount to ineffective assistance.

Accordingly, the court will deny as meritless allegation two of claim one.

### 3. Counsel failed to argue that the government breached the plea agreement

Paragraph four of the plea agreement provides, in relevant part, that movant

acknowledges that he has been put on notice that the government will argue at
sentencing that the court must calculate [movant's] Guideline range under
U.S.S.G. Section 2G2.1, pursuant to the cross-reference set forth in Section
2G2.2(c).

(D.I. 67)  In his sentencing memorandum and during the sentencing hearing, defense

counsel argued that the cross-reference did not apply to movant's case because

movant only pled guilty to receipt of pornography produced by other persons, not to

**conspiracy** to receive pornography, and that relevant conduct must relate in some way

to the offense of conviction; in other words, relevant conduct should not include actions

committed by third parties.  (D.I. 80;  D.I. 84 at 8)  When given an opportunity to

respond to movant's argument and address the applicability of the cross-reference, the

government stated that it was relying upon its sentencing memorandum.  *Id.*  The court

then explained that the facts admitted in paragraph one of the plea agreement supplied

"the factual basis for having this relevant conduct, for having the cross-reference

applied to his case.  Therefore, I believe that while [movant's objection to the

applicability of the cross-reference] might have carried some weight otherwise, certainly,

in this case, with the plea agreement set up the way it is, the facts are there, the

admission is there, it supports the cross-reference."  *Id.* at 9.

In this proceeding, movant contends that the government breached paragraph

four of the agreement by not presenting any verbal argument at sentencing on the

applicability of the relevant cross-reference, and that counsel was ineffective for failing to raise the issue of this alleged breach on direct appeal. Movant supports his argument that the government was required to present an oral argument regarding the cross-reference at sentencing by citing *United States v. Camarillo-Tello*, 236 F.3d 1024 (9th Cir. 2001).

Whether a plea agreement has been breached is determined according to the law of contracts. *See United States v. Hodge*, 412 F.3d 479, 485 (3d Cir. 2005). As such, "courts must determine whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty." *United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir. 1998). Here, the plain terms of paragraph four state that the government "will argue" that movant's sentence "must" be calculated under U.S.S.G. § 2G2.1, and nothing in the paragraph requires the government to present that argument verbally. Consequently, a reasonable person would have understood the plain language of paragraph four to mean that the government was planning to present an argument that movant's sentence had to be determined under the cross-reference, but that the government was not obligated to present that argument in any particular manner.

In turn, prior to sentencing, the government filed a sentencing memorandum which included a written argument as to why the cross-reference applied in movant's case. The memorandum was part of the record at sentencing, and the court considered the arguments in that memorandum when determining movant's sentence. Considering that the plea agreement did not require the government to present a verbal argument regarding the applicability of the cross-reference, and that the government's sentencing

9

memorandum explicitly argued for the applicability of the cross-reference, the court finds that the government's reliance on the sentencing memorandum falls within the realm of conduct movant would reasonably expect under the plea agreement. Accordingly, the court concludes that the government did not breach the plea agreement by relying on the argument presented in the sentencing memorandum.

Movant's citation to *Camarillo-Tello* does not alter the court's conclusion. In *Camarillo-Tello*, an illegal re-entry case, the United States entered a plea agreement and agreed to recommend a four-point downward adjustment in exchange for the defendant's stipulation to his removal, his participation in the fast-track program, and his waiver of appeal. *Camarillo-Tello*, 236 F.3d at 1025. Prior to sentencing, the government filed a sentencing memorandum recommending a four-level downward adjustment based only on the defendant's "stipulating to removal pursuant to U.S.S.G. 5K2.0." *Id*. The pre-sentence report recommended only a two-level downward departure for the stipulated removal. *Id*. At sentencing, after speaking with the defense, and before the government had an opportunity to speak, the court indicated that it would follow the recommendation of probation. When the court asked the government to speak, the government stated that "the recommendation of Probation is appropriate." *Id*. On appeal, the Ninth Circuit found that the government had breached the plea agreement in two ways: (1) by failing in its sentencing memorandum to set forth all of the reasons that were contained in the plea agreement justifying the four level downward departure; and (2) by failing at sentencing to verbally recommend the four level downward adjustment as required by the plea agreement. The Ninth Circuit explained that,

10

> [w]hen the government agrees to recommend a certain sentence . . . the benefit to the defendant is that it presents a 'united front' to the court. The idea is that when the sentencing court hears that both sides believe a certain sentence is appropriate and reasonable in the circumstances, this is more persuasive than only the defendant arguing for that sentence.

*Id.* at 1027-28.

Movant's situation differs significantly from that in *Camarillo-Tello*. In *Camarillo-Tello*, the government failed to provide a verbal argument supporting its written recommendation that the defendant's sentence should be reduced, whereas paragraph four of movant's plea agreement does not assert that the government "will recommend" a certain sentence or a downward departure that would have been more favorable to movant. Rather, paragraph four asserts that the government "will argue" that the cross-reference applies in movant's case, and the government's reason for making this argument was to enhance, not mitigate, movant's sentence.

Movant's related argument that the government breached paragraph four of the agreement by failing to inform the court that movant was not admitting "guilt" to the cross-reference is equally unavailing. Nothing in the instant plea agreement expressly required the government to explain that movant was only agreeing to permit the government to present a future argument as to why the cross-reference applied. Indeed, the wording of paragraph four (i.e., "will argue") clearly demonstrates that the parties did not view the application of the cross-reference to movant's case as mandatory but, rather, that its applicability was to be determined at sentencing. Thus, the court concludes that the government's failure to state the "obvious" was not inconsistent with the plea agreement or with what movant should have reasonably understood.

11

In summary, the plea agreement did not preclude the government from relying on the argument contained in its sentencing memorandum regarding the applicability of the cross-reference to movant's sentence. The plea agreement also did not require the government to tell the court that movant was only permitting the government to present a future argument as to why it believed the cross-reference applied and that he was not conceding that the cross-reference applied. Given these circumstances, movant cannot demonstrate that he suffered prejudice as a result of counsel's failure to argue on appeal that the government breached paragraph four of the plea agreement. Accordingly, the court will deny allegation three of claim one.

### 4. Counsel provided erroneous advice about the two plea offers

On December 18, 2007, during plea negotiations, the government sent to defense counsel an email providing as follows:

> As I explained last week, I will offer your client a plea out from under the production charges' fifteen mandatory minimum sentence. The offer, which I have not had a chance to finalize in writing, will be to two counts of distribution as charged in the indictment – probably counts seven (images sent to Jonathan McKinney) and eleven (images sent to Eric Tyre). Also, your client would have to waive indictment and enter a guilty plea to a one count Information charging receipt of child porn, it being the web cam transmission from Phillips. Section 2G2.2 pertains to the receipt and/or distribution of child porn. However, at sentencing the government will argue the applicability of its subsection c cross-reference to 2G2.1.
>
> I'll get you a firm written plea offer by the end of the week and give your client a reasonable period to consider the offer. However, a condition of any plea offer will be that you suspend your discovery motion until such time as the plea offer may be rejected. (That doesn't mean that I won't give any information from the computers, such as screen shots that relate to the admitted charges. I'll work with you, within reason.)

(D.I. 133-1 at 2)  On December 21, 2007, the government sent an email to defense counsel containing as an attachment a written Memorandum of Plea Agreement that reflected the terms of the December 18th email.  After further plea negotiations, the government revised the terms of the plea offer and, on January 17, 2008, sent an email to defense counsel, attaching a copy of the original Memorandum of Plea Agreement containing the prosecutor's handwritten negotiated revisions.  In the body of the January 17th email, the prosecutor wrote, in part:  "Attached is the revised plea offer . . . . As soon as you confirm, I'll forward clean copies of the papers to the court for a plea tomorrow."  *Id.* at 8.  The next day, movant entered a guilty plea pursuant to the revised Memorandum of Plea Agreement.

Movant contends that counsel provided ineffective assistance by advising him that the second plea agreement was better than the first plea agreement, because the first plea agreement did not mention the "third charge of receipt" or that the government "will argue" the applicability of the cross-reference.  Movant also contends that counsel failed to advise him that the second agreement included "admitted facts that he was actually innocent of."  (D.I. 110 at 22)

These arguments are meritless. The second plea agreement kept many of the provisions from the first plea agreement, did not add any new terms or conditions, and only deleted certain terms.  For instance, both plea agreements contained the same provision stating that movant had notice that the government would argue the applicability of the cross-reference at sentencing.  The two plea agreements also contained the identical description of the "facts" forming the basis for the sole count charging movant with receipt of child pornography.  Specifically, paragraph two of the

13

first plea agreement and paragraph one of the second plea agreement both provided

that

> [movant] admits that on or about June 16, 2006, he used an Internet connected
> computer to have an online chat conversation with Christopher J. Phillips, a
> separately indicted co-conspirator, during which they also used web cams to
> view each other. While transmitting on web cam to [movant], Christopher J.
> Phillips had on his lap a minor, visible to [movant], and at [movant's]
> encouragement and inducement Christopher J. Phillips did simulate masturbation
> of the minor, and did pose the minor in order to effect the lascivious exhibition of
> the minor's pubic area.

(D.I. 133 -1)  With respect to the differences between the two plea agreements, the first

agreement required movant to enter a guilty plea to three felonies (receipt of child

pornography and two counts of distribution of child pornography), whereas the second

plea agreement required movant to enter a guilty plea only to receipt of child

pornography.  As a result, the second plea agreement reduced movant's total maximum

exposure from sixty years on three felonies to twenty years on one felony.

This record belies movant's assertions regarding the "flaws" in the second plea

agreement, and demonstrates that the second agreement was actually more favorable

for him.  In these circumstances, the court concludes that counsel did not provide

ineffective assistance in advising movant to accept the second, more favorable, plea

agreement.  Accordingly, the court will deny allegation four of claim one.

### 5. Counsel failed to persuasively argue that movant's sentence should not be calculated under § 2G2.1 because movant did not intend to produce child pornography

On direct appeal, defense counsel argued that this court misinterpreted §1B1.2

and erred in applying the cross-reference in § 2G2.2(c) (and, therefore, in sentencing

movant under the provisions of § 2G2.1), because the "offense of conviction" was

14

receipt of child pornography, not production of child pornography. *See United States v. Thielemann*, Appeal No. 08-2335, Op. App. Br. for Appellant at 16-19 (3d Cir. Oct. 27, 2008); *See Thielemann*, 575 F.3d at 269-70. According to defense counsel, the court erred because it considered the conduct of others as part of movant's "offense of conviction." The Third Circuit rejected this argument as meritless because there was "no ambiguity in the Memorandum of Plea Agreement or Sections 1B.2 and 2G2.2(c)(1)," and also because the evidence of the many chats and encouragement of sexual activity with minors clearly established that movant's actions were part of a "common plan and course of practice that were relevant to his charged conduct." *Thielemann*, 575 F.3d at 269-70 & n. 7.

Now, in allegation five, movant contends counsel should have presented more persuasive sentencing and appellate arguments that the cross-reference contained in § 2G.2(c) (explaining when a court should calculate a sentence under § 2G2.1) did not apply to movant's case because his "purpose was to excite the men involved, not to produce a visual depiction" of child pornography. (D.I. 110 at 22-26) According to movant, it "is simply not enough to say that the conversation speaks for itself and for [movant], and that it is the end of the matter [, especially] when the statute makes a specific reference to the defendant's purpose in taking the photograph." *Id.* at 23.

To the extent the instant argument merely restates movant's earlier argument regarding counsel's alleged incorrect interpretation of the term "visual depiction," the court will deny it as meritless for the same reasons discussed in Section A(2) of this opinion. *See supra* at 7-8. To the extent the instant argument mirrors the substantive "erroneous application of the cross-reference" argument counsel presented on direct

15

appeal, movant's repetitive and legally unsupported interpretations of the relevant guideline provisions he has presented in this proceeding merely express his dissatisfaction with the Third Circuit's rejection of his appellate claim and do not establish a potentially meritorious claim overlooked by counsel. As such, movant cannot demonstrate a reasonable probability that the outcome of his appeal would have been different but for counsel's failure to present movant's dubious interpretations and speculative arguments. Accordingly, the court will deny the instant ineffective assistance argument as meritless.

### 6. Counsel failed to review full discovery

Movant contends that counsel did not review the full available discovery because he mistakenly believed that a video of child pornography existed but was lost or destroyed. Movant further asserts that counsel would not have misled movant into entering a guilty plea if counsel had known movant never made such a video. However, as the court explained in Section A(2) of this opinion, § 2256(5)'s definition of "visual depiction" includes live, web cam transmissions. *See supra* at 7-8. As such, even if counsel did not review the full discovery because he mistakenly believed that there had been a video that was lost, that failure did not affect the applicability of § 2252A(a)(2), (b)(1) and § 2256(5) to movant's case. Thus, movant cannot demonstrate a reasonable probability that he would not have pled guilty but for counsel's alleged error. Accordingly, the court will deny allegation six of claim one as meritless.

### 7.  Counsel did not prevent the court's improper involvement in the plea process

In allegation seven, movant asserts that the court did not explain the essential elements of the crime charged or that he was admitting "guilt" to the cross-reference, and that counsel should have raised this issue on direct appeal.  (D.I. 110 at 21)  Movant also contends that counsel permitted the court to be improperly involved in the plea proceedings and permitted the court to "use intimidating and threatening words and intentionally mislead [movant] into believing he was not admitting guilt to the cross-reference." *Id.* at 21- 22.  These arguments are unavailing.

First, at movant's change of plea hearing, the court expressly reviewed with movant the elements of the charged offense "receipt of child pornography."  (D.I. 121 at 11)  After reading to movant his factual admission set forth in paragraph one of the agreement, the court stated:  "Now, in Paragraph One, you formally admit certain facts, and I just need you to confirm that these facts are an accurate reflection of your conduct and are consistent with your entering a plea of guilty to this charge today." *Id.* at 11-12.  Movant responded, "Yes." The court then re-emphasized:  "So, these are things – the conduct described in Paragraph One is conduct that you did engage in?"  Movant again responded, "Yes." *Id.* at 12.  Given this record, movant cannot demonstrate that he lacked a factual understanding of the elements of the offense or that the court failed to explain those essential elements.  As such, any contention that counsel provided ineffective assistance by failing to argue that movant did not understand the elements of the offense "receipt of child pornography" necessarily fails.

17

Somewhat relatedly, movant asserts that counsel was ineffective for not arguing that the court failed to explain that movant's guilty plea constituted an "admission of guilt to the cross-reference." This argument appears to be premised on movant's belief that the cross-reference was automatically applied because he admitted certain facts in paragraph one of the agreement. This argument lacks merit. Paragraph four of the agreement explicitly asserts that the "Government will argue at sentencing that the Court must calculate [movant's] Guideline range under U.S.S.G. Section 2G2.1, pursuant to cross reference set forth in Section 2G2.2(c)." The phrase "will argue" clearly demonstrates that the application of the cross-reference was to be determined at sentencing. Thus, the court did not err in failing to inform movant that he had admitted "guilt" to the cross-reference, because the applicability of the cross-reference was to be decided during movant's subsequent sentencing hearing. As such, counsel did not provide ineffective assistance by failing to assert this meritless argument on direct appeal.

To the extent movant's argument should be construed as asserting that his guilty plea was unknowing and involuntary because the court did not specifically inform him during the plea colloquy that it would consider any relevant conduct related to the admissions of fact in paragraph one when it calculated his sentence, the argument is also unavailing. First, although movant's admission to the facts set forth in paragraph one of the plea agreement during the change of plea colloquy served as an explicit factual basis for his guilty plea, it did not serve as a ceiling to the sentence that could be imposed. *See* Fed. R. Crim. P. 11(b)(3). Second, during movant's plea colloquy, the court was only required to inform movant of the mandatory minimum and maximum

18

possible sentences, the rights he was relinquishing by pleading guilty, and that he

understood the nature of the charge to which he was pleading guilty; the court was not

required to provide movant with an estimate of his sentence or the relevant conduct to

be considered in calculating his sentence before he accepted his guilty plea.[3]  *See* Fed.

R. Crim. P. 11(b)(1)(H), (G).

Significantly, the record in this case reveals that movant was apprised of all the

necessary information regarding his possible future sentence.  For instance, the plea

agreement explicitly states that the court must consider the United States Sentencing

Guidelines when determining movant's sentence, and that the sentence to be imposed

was to be determined solely by the district court.  During the plea colloquy, the court

informed movant that his sentence would be determined pursuant to the sentencing

guidelines.[4]  He was informed that the United States Probation Office was going to

prepare a presentence investigation report, and that both parties would have the

opportunity to challenge the facts therein.  The court advised movant of the minimum

---

[3]Although not directly related to the sentencing issue presented here, the court was also
required to (and did) ensure that movant's plea was supported by an independent
factual basis, was voluntary, and did not result from force, threats, or promises not
contained in the plea agreement.  *See* Fed. R. Crim. P. 11(b)(2)-(3).

[4]Under the sentencing guidelines, "the offense" for which a defendant can be sentenced
includes "the offense of conviction and all relevant conduct under § 1B1.3 ("relevant
conduct")."  U.S.S.G. § 1B1.1, application note 1(h).  "Relevant conduct" includes "all
acts and omissions committed, aided, abetted, counseled, commanded, inducted,
procured, or willfully caused by the defendant,"  and also uncharged and unconfessed
conduct.  *See* U.S.S.G. § 1B1.3(a)(1)(A).  Pursuant to § 1B1.3(a)(1)(B), relevant
conduct for which a defendant may be sentenced also includes, in the case of a "jointly
undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise
undertaken by the defendant in concert with others, whether or  not charged as a
conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of
the jointly undertaken criminal activity, that occurred during the commission of the
offense of conviction . . ."

and maximum penalties and the rights he would forfeit by pleading guilty, and also advised movant that the sentence imposed may be harsher or more severe than the sentence movant expected.  Movant stated he understood that he would still be bound by his guilty plea if he received a sentence harsher than his expectations or outside the range set forth in the sentencing guidelines.  Finally, movant's sentence did not exceed the statutory maximum.

Given these circumstances, the court's "failure" during the plea colloquy to apprise movant of all of the specific conduct it would consider in determining his sentence did not invalidate his guilty plea.  Consequently, counsel was not ineffective for failing to raise this argument on direct appeal.

Finally, the record belies movant's contention that the court "use[d] intimidating and threatening words and intentionally misle[d] [movant] into believing he was not admitting guilt to the cross-reference." *Id.* at 22.  First, the quotes cited by movant in support of this contention are the remarks the court made during the sentencing hearing, not the remarks the court made during movant's change of plea colloquy.  In turn, both the plea colloquy transcript and the sentencing transcript reveal that the court did not improperly participate in the plea process, or intimidate and threaten movant at sentencing.   Thus, movant's related ineffective assistance of counsel argument is meritless.

### 8. Counsel committed multiple errors

In his final ineffective assistance argument, movant contends that the aforementioned multiple errors demonstrate that counsel provided ineffective assistance.  For the reasons previously discussed, the court has determined that none

20

of movant's assertions regarding counsel's alleged errors have merit.  Accordingly, the
court will deny this final allegation for lack of merit as well.

### B.  Claim Two: The Court Violated Movant's Due Process Rights During Sentencing By Improperly Considering Out-Of-Court Testimony in Determining Movant's Sentence and in Making Credibility Decisions

In claim two, movant contends that the court violated his right to due process by
considering the out-of-court testimony of co-defendant Phillips in deciding movant's
sentence, and by implicitly determining that movant was not credible.  More specifically,
movant alleges that the court violated his rights under the confrontation clause by
basing his sentence on "an undefinable range of facts and circumstances that are not
part of this record and which could not therefore be addressed nor responded to by the
defendant."  (D.I. 110 at 25-26;  D.I. 141 at 8)  In an attempt to provide additional
support for this argument, movant directs the court's attention to the dissent in the Third
Circuit's decision in co-defendant Phillips' appeal, which quotes this court as making the
following statement during Phillips' sentencing: "I believe you [Phillips] were the victim of
childhood sexual abuse.  [Movant] . . . claimed that he was.  I do not believe that, but I
do believe you were."  *United States v. Phillips*, 345 F. App'x 772, 776 (3d Cir. 2009).

The sixth amendment right to confrontation is not a sentencing right, and
sentencing courts may rely on reliable hearsay evidence.  *See United States v. Bras*,
483 F.3d 103, 109 (D.C. Cir. 2007)("We join our sister circuits in holding that nothing in
*Crawford v. Washington*, 541 U.S. 36 (2004) or *Booker* alters the pre-*Crawford* law that
the admission of hearsay testimony at sentencing does not violate confrontation
rights.").  In the sentencing context, due process only requires that any information
factored into sentencing be relevant, reliable, and accurate.  *See United States v.*

21

*Matthews*, 773 F.2d 48 (3d Cir. 1985).  This right is guaranteed by affording the defendant notice of, and an opportunity to respond to, information in a presentence report.  *See United States v. Tucker*, 404 U.S. 443 (1974); *Townsend v. Burke*, 334 U.S. 736, 741 (1948).  Aside from this limitation, a judge's discretion in sentencing is "largely unlimited either as to the kind of information he may consider, or the source from which it may come."  *Tucker*, 404 U.S. at 446.

Movant's due process/confrontation clause challenge fails under this framework.  To begin, the court's statement quoted in Phillips' appeal does not demonstrate that the court made an improper credibility determination during movant's sentencing hearing, because Phillips was sentenced after movant's sentencing hearing.

Moreover, the record belies movant's assertion that the court considered improper factors in determining movant's sentence.  For instance, at the start of movant's sentencing hearing, the court stated:

> I have read the sentencing memorandum submitted by both the government and on [movant's] behalf as well as Dr. Roger's report as well as the letters submitted, so I believe that I have read everything that the parties have given me.

*Id.* at 6-7.  During movant's sentencing hearing, defense counsel stated that movant "was abused and abused frequently by several people as a child, and you could at that point virtually predict that something like this was going to happen someday."  *Id.* at 22. After being informed that anything he said could be used against him, movant made a statement to the court challenging the accuracy of the presentence report, and he also attempted to explain why his "problem" should not be viewed as one involving child pornography.  Thereafter, the court remarked:

22

I have reviewed all of the materials submitted in connection with [movant's] sentencing in light of the sentencing guidelines and the factors enumerated in Title 18 of the United States Code, Section 3553(a). In this regard, because I have been responsible as well for sentencing many of those individuals who were charged as a result of forensic evidence gathered from [movant's] computer, I have taken those sentences and those defendants' conduct into account in making sure that the sentencings are consistent and that the factual basis is consistent.

I, frankly, reject the notion that [movant] is a victim. I find that he instead is a predator in his own right, as he initiated most of the contact and conversations related to the charges.

\*               \*               \*

-- the record presented to me has been in connection with all of the other folks.

\*               \*               \*

I will assume for purposes of this proceeding that he does not have a propensity to physically harm or engage in sexual activities with children.

*Id.* at 30-31

As this record demonstrates, the court considered all of the evidence provided by movant. In addition, although the court referred to facts common to both movant and his co-defendants during movant's sentencing, the court's reference to movant's co-defendants' cases did not indicate that the court was relying on the evidence from those cases in fashioning movant's sentence. Rather, the court's reference to movant's co-defendants demonstrates the court's recognition of § 3553(a)(6)'s requirement that a district court "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

The Third Circuit's opinion affirming movant's conviction and sentence provides further support for this conclusion. First, after reviewing movant's sentencing transcript, the Third Circuit held that this court gave meaningful consideration to the § 3553 factors

and that movant's sentence was reasonable. *Thielemann*, 575 F.3d at 272. Second, and perhaps more importantly, the Third Circuit also explained that the court's reference to the other individuals charged in connection with movant demonstrated the court's consideration of "the need to avoid unwarranted sentence disparities" when determining movant's sentence. *Thielemann*, 575 F.3d at 271.

For these reasons, the court will deny claim two.

### C. Claim Three: Movant did not Understand the Factual Elements of Plea and the Court Erroneously Applied the Cross-Reference

In claim three, movant contends that he did not understand the factual elements of the plea agreement and that the court did not explain the applicability of the cross-reference. The court concurs with the government's assertion that claim three merely restates movant's underlying arguments in his ineffective assistance of counsel claim as contained in subsection seven of claim one. *See supra* at 18-21. The court will not re-visit these redundant arguments because it has already rejected movant's contentions as meritless. Accordingly, the court will deny claim three as meritless.

### D. Claim Four: Insufficient Evidence To Apply The Cross-Reference

Once a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255." *United States v. Orejuela*, 639 F.2d 1055, 1057 (3d Cir. 1981). As a general rule, absent an intervening change in the governing substantive law or other exceptional circumstances, movants pursuing relief under § 2255 are barred from re-litigating "questions which were raised and considered on direct appeal." *United States*

24

*v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993); *see also Davis v. United States*, 417 U.S. 333, 342 (1974).

In claim four, movant contends that the Third Circuit erred in affirming the court's application of the cross-reference without first determining that there was "sufficient evidence to use the cross-reference." This argument was implicitly considered and rejected by the Third Circuit on direct appeal. Movant does not contend that an intervening change of law or an extraordinary circumstance has occurred since that adjudication. Accordingly, the court will deny this portion of claim four as procedurally barred.

Relatedly, movant contends that counsel provided ineffective assistance by failing to argue that his co-defendant Phillips acted in "this way" before even knowing movant, and that the court erroneously assumed that movant caused Phillips' actions. Given the Third Circuit's affirmance of movant's sentence and its rejection of movant's insufficient evidence argument, the court cannot conclude that counsel provided ineffective assistance in this respect. Thus, the court will deny this portion of claim four as meritless.

### E. Claim Five: Movant's Sentence is Unreasonable Because U.S.S.G. § 2G2.2(c) is Flawed

In his final claim, movant contends that § 2G2.2(c) is flawed, because it "was not developed pursuant to the Commission's institutional role and based on empirical data and national experience, but instead was developed largely pursuant to congressional directives." (D.I. 138 at 14-16) He also contends that the court construed § 2G2.2(c) too broadly, because Congress and the Sentencing Commission did not intend for the

25

cross-reference to apply to all offenders; rather, it was intended to apply to people who create a still image and/or video of child pornography or to people who had direct contact with a minor.  Citing *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010) and *Kimbrough v. United States*, 552 U.S. 85 (2007), movant argues that his sentence must be vacated because the court failed to deviate from a flawed guideline despite its authority to do so.  (D.I. 138 at 16)

This argument is unavailing.  "*Kimbrough* does not require a district court to reject a particular Guidelines range where that court does not, in fact, have disagreement with the Guideline at issue."  *United States v. Lopez-Reyes*, 589 F.3d 667, 671 (3d Cir. 2009).  And, although the Third Circuit expressed judicial dissatisfaction with § 2G2.2 in *Grober* as that section pertains to distributors of child pornography, it explicitly noted that district courts are bound to consider § 2G2.2 when performing their sentencing analyses.  *See Grober*, 624 F.3d at 609 ("the Sentencing Guidelines deserve careful consideration in each case, and because they have been produced at Congress' direction, they cannot be ignored.").  Thus, according to the Third Circuit, when a "district court does not in fact have a policy disagreement with § 2G2.2, it is not obligated to vary on this basis," *id.* at 609, nor is the court "required to engage in independent analysis of the empirical justifications and deliberative undertakings that led to a particular guideline." *United States v. Rudow*, 373 F. App'x 298, 302 (3d Cir. 2010).

In this case, the court evaluated the facts of movant's situation, considered the factors set forth in § 3553(a), and found the Guidelines range reasonable and appropriate.  (D.I. 84 at 31)  The court did not voice a policy disagreement with the

26

sentencing Guidelines applicable to movant's case and, notably, the Third Circuit affirmed movant's sentence. Thus, the court will deny movant's final claim as meritless.

## IV.   EVIDENTIARY HEARING

Section 2255 requires a district court to hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that movant is not entitled to relief because his arguments lack merit. Therefore, the court will deny movant's § 2255 motion without an evidentiary hearing.

## V.   PENDING MOTION

During the pendency of this proceeding, movant filed a motion to compel the government to produce forensic evidence pertaining to the minor involved in this proceeding. (D.I. 131) Having just determined that movant's § 2255 motion must be denied, the court will deny the motion to compel as moot.

## VI.   CONCLUSION

For the reasons stated, the court will dismiss movant's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence without an evidentiary hearing. Additionally, the court will not issue a certificate of appealability because movant's § 2255 motion fails to assert a constitutional claim that can be redressed, and reasonable jurists would not find this assessment debatable. *See* 28 U.S.C.

§ 2253(c)(2)("A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); Fed. R. App. P. 22; 3d Cir. L.A.R. 22.2 (2011). An appropriate order will follow.